Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/24/2023 09:06 AM CST

Preserve the Sandhills, LLC, and Charlene
Reiser-McCormick, appellants, v. Cherry
County, Nebraska, et al., appellees.

___ N.W.2d ___

Filed February 24, 2023.    No. S-21-888.

1. **Jurisdiction: Pleadings: Evidence: Words and Phrases.** If a motion challenging a court's subject matter jurisdiction is filed after the pleadings stage, and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge."

2. **Jurisdiction: Pleadings: Appeal and Error.** Where the trial court's decision to dismiss for lack of subject matter jurisdiction is based on a factual challenge, the court's factual findings are reviewed under the clearly erroneous standard. But aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.

3. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews a trial court's decision to admit or exclude expert testimony for an abuse of discretion.

4. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.

5. **Standing: Jurisdiction: Appeal and Error.** Because standing is a jurisdictional component, an appellate court must address it as a threshold matter.

6. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

7. **Standing.** Standing relates to a court's power to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.

8. ____. The focus of the standing inquiry is not on whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.

9. ____. To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

10. ____. Generally, a party has standing only if he or she has suffered or will suffer an injury in fact. Such an injury must be concrete in both a qualitative and temporal sense, and it must be distinct and palpable, as opposed to merely abstract. And the alleged harm from such an injury must be actual or imminent, not conjectural or hypothetical.

11. **Standing: Proof.** To show standing, it is generally insufficient for a plaintiff to have merely a general interest common to all members of the public.

12. **Municipal Corporations: Injunction: Proof: Taxation.** A person seeking to restrain the action of a governmental body must show some special injury peculiar to himself or herself aside from, and independent of, the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.

13. **Trial: Witnesses: Real Estate.** For the testimony of an expert or lay witness to be admissible on the question of market value of real estate, the witness must be familiar with the property in question and the state of the market.

14. **Jurisdiction.** Subject matter jurisdiction cannot be created by waiver, estoppel, consent, or conduct of the parties.

Appeal from the District Court for Cherry County: MARK D. KOZISEK, Judge. Affirmed.

Jason M. Bruno, Diana J. Vogt, and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Eric A. Scott, Cherry County Attorney, and David S. Houghton and Justin D. Eichmann, of Houghton, Bradford, & Whitted, P.C., L.L.O., for appellees.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ., and CARSON, District Judge.

STACY, J.

This is an appeal from an order dismissing an action seeking to enjoin two members of a county board of commissioners from voting on an application for a conditional use

permit (CUP). The district court dismissed the action for lack of standing. Because we agree the plaintiffs lack standing to bring the action, we affirm.

## I. BACKGROUND

In 2019, BSH Kilgore, LLC (BSH), applied for a CUP to erect and maintain 19 commercial grade wind turbines and related facilities in Cherry County, near the village of Kilgore, Nebraska. The application was set for a public hearing before the Cherry County Board of Commissioners (the Board) on July 16.

### 1. Complaint and
### Amended Complaint

About 2 weeks before the scheduled hearing, opponents of the CUP application filed a complaint in the district court for Cherry County seeking an injunction. More specifically, Preserve the Sandhills, LLC (PTS), and Charlene Reiser-McCormick filed a complaint against several defendants, including the Board and commissioners Martin DeNaeyer and Tanya Storer (collectively the defendants), alleging that DeNaeyer and Storer had conflicts of interest and should be enjoined from considering or voting on the CUP application.

After the defendants successfully moved to dismiss the original complaint for lack of standing, PTS and Reiser-McCormick filed an amended complaint with additional standing allegations. The operative amended complaint was styled as five causes of action, all premised on the Nebraska Political Accountability and Disclosure Act (NPADA).[1] It alleged that commissioners DeNaeyer and Storer had conflicts of interests under the NPADA that should preclude them from considering BSH's CUP application, but had refused to disqualify themselves from voting on the CUP. The amended complaint sought an injunction precluding DeNaeyer and Storer from considering or voting on the CUP application. Alternatively,

---

[1] Neb. Rev. Stat. §§ 49-1401 to 49-14,142 (Reissue 2021).

in the event the court determined that DeNaeyer and Storer did not have a conflict of interest as defined in the NPADA, the amended complaint requested a declaratory judgment finding the conflict of interest provisions in the NPADA were unconstitutional.

The amended complaint also contained allegations related to the legal standing of PTS and Reiser-McCormick. It alleged Reiser-McCormick was a "concerned citizen, landowner, and taxpayer of Cherry County [who] will suffer harm and detriment if the CUP is approved." And it alleged PTS was a Nebraska limited liability company "organized for and dedicated to the education and preservation of the Nebraska Sandhills [and consisting] of approximately 500 ranchers, taxpayers, property owners, business owners, residents, and concerned citizens of Counties located within the Sandhills, including Cherry County." The amended complaint also affirmatively alleged that both PTS and Reiser-McCormick had standing to bring the action under "Cherry County Zoning Regulations" and "by law and equity."

The defendants filed an answer expressly denying that DeNaeyer and Storer had conflicts of interest under the NPADA. The answer also denied the various standing allegations of PTS and Reiser-McCormick, and it affirmatively alleged both PTS and Reiser-McCormick lacked standing to bring the action and the court therefore lacked subject matter jurisdiction over the action.

## 2. District Court Order
### and Appeal

A hearing was held on the issue of standing, and evidence was adduced by all parties. In an order entered October 6, 2021, the district court agreed with the defendants that both PTS and Reiser-McCormick lacked legal standing to bring the action seeking to enjoin a vote on the CUP. The court's order addressed, and rejected, each of the standing theories of PTS and Reiser-McCormick.

First, it concluded that neither PTS nor Reiser-McCormick had shown common-law or injury-in-fact standing. Based on the evidence, the court found that PTS owned no property in Cherry County, and there was no evidence that PTS would suffer any direct injury as a result of the CUP.[2] The court emphasized that PTS is "a separate legal entity, having an existence separate and apart from its members," and concluded "PTS cannot bootstrap the injuries of its members into the injuries of its own. PTS suffers no separate and distinct injury; it has no common-law standing."

As to Reiser-McCormick, the court found she owned property in Cherry County, but it was located approximately 40 miles from the wind turbine project that was the subject of the CUP. Given this geographic distance, the court concluded Reiser-McCormick had not shown she would suffer any injury different than that suffered by the general public if the Board approved the CUP. The court acknowledged that Reiser-McCormick had offered the affidavit of a real estate broker who opined that the value and marketability of her property would be impaired if the CUP was approved, but the court sustained the defendants' foundational objections to the broker's affidavit, so it was not received into evidence.

The district court also considered and rejected arguments that the plaintiffs had standing to bring the action under certain Cherry County zoning regulations, finding that none of the zoning regulations relied on by PTS and Reiser-McCormick were applicable to the facts of this case. And finally, the court rejected arguments that PTS and Reiser-McCormick had standing to challenge issuance of the CUP under Neb. Rev. Stat. § 23-114.05 (Reissue 2022), reasoning that a similar standing argument had already been expressly rejected by this court in *Egan v. County of Lancaster*.[3]

---

[2] See, e.g., *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020) (finding party has standing only if it will suffer injury in fact different from injury to general public).

[3] See *id.*

After considering and rejecting each of the standing theories of PTS and Reiser-McCormick, the district court concluded it lacked subject matter jurisdiction over the action and dismissed it on that basis. PTS and Reiser-McCormick filed this appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

PTS and Reiser-McCormick assign, consolidated and restated, that the district court erred in (1) finding they lacked standing to bring this action, (2) excluding the affidavit of the real estate broker, and (3) failing to reach the merits of their various claims.

## III. STANDARD OF REVIEW

[1,2] If a motion challenging a court's subject matter jurisdiction is filed after the pleadings stage, and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge."[4] Where the trial court's decision to dismiss for lack of subject matter jurisdiction is based on a factual challenge, the court's factual findings are reviewed under the clearly erroneous standard.[5] But aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.[6]

[3] An appellate court reviews a trial court's decision to admit or exclude expert testimony for an abuse of discretion.[7]

## IV. ANALYSIS

The district court dismissed this action for lack of subject matter jurisdiction after holding an evidentiary hearing

---

[4] *Great Plains Livestock v. Midwest Ins. Exch.*, 312 Neb. 367, 979 N.W.2d 113 (2022).

[5] *Id.*

[6] *Id.*

[7] See *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018).

and concluding that PTS and Reiser-McCormick had failed to prove standing under any of the theories they advanced. PTS and Reiser-McCormick contend this was error, and argue the evidence showed they have common-law or injury-in-fact standing to bring this action seeking to enjoin members of the Board from voting on the CUP. Alternatively, they argue they have standing to bring the action (1) under certain Cherry County zoning regulations, (2) under § 23-114.05, or (3) because they were allowed to participate in proceedings before the Board related to the CUP application. We address each of these standing arguments in turn. But first, we review the general principles that govern our standing analysis.

[4,5] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[8] Because standing is a jurisdictional component, an appellate court must address it as a threshold matter.[9]

[6-8] Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[10] Standing relates to a court's power to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.[11] The focus of the standing inquiry is not on whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.[12]

---

[8] *Continental Resources v. Fair*, 311 Neb. 184, 971 N.W.2d 313 (2022).

[9] See *In re Guardianship of Nicholas H.*, 309 Neb. 1, 958 N.W.2d 661 (2021).

[10] *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021).

[11] *Egan, supra* note 2.

[12] *Id*.

[9-12] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[13] Generally, a party has standing only if he or she has suffered or will suffer an injury in fact.[14] Such an injury must be "'concrete in both a qualitative and temporal sense,'" and it must be "'distinct and palpable, as opposed to merely abstract,'" and the alleged harm from such an injury must be "'actual or imminent, not conjectural or hypothetical.'"[15] We have emphasized that to show standing, it is generally insufficient for a plaintiff to have "'merely a general interest common to all members of the public.'"[16] And we have said that a person seeking to restrain the action of a governmental body must show some special injury peculiar to himself or herself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.[17]

### 1. Reiser-McCormick Did Not Show Common-Law Standing

As noted, our common-law standing inquiry generally focuses on whether the party bringing suit has suffered or will suffer an injury in fact.[18] The district court found that neither PTS nor Reiser-McCormick demonstrated an injury in fact. On appeal, PTS and Reiser-McCormick confine their injury-in-fact arguments to Reiser-McCormick; we limit our analysis accordingly.

---

[13] *Equestrian Ridge, supra* note 10.

[14] *Egan, supra* note 2.

[15] *Id*. at 53, 952 N.W.2d at 669, quoting *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[16] *Id.* at 54, 952 N.W.2d at 669, quoting *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999).

[17] *West Fort Residents Assn. v. Housing Auth. of City of Omaha*, 205 Neb. 397, 288 N.W.2d 27 (1980).

[18] *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019).

### (a) No Injury in Fact Due to
### Geographic Distance

The record shows that Reiser-McCormick owns land in Cherry County, but the district court found that her land is located approximately 40 miles southeast of where the 19 wind turbines would be erected if the Board approved the CUP. Our review of the record supports this finding.

In *Egan*, a taxpayer sought to challenge a special use permit involving a poultry production facility located 13 miles from her property, arguing her ownership of land in the county demonstrated her injury in fact.[19] We concluded the taxpayer in *Egan* lacked injury-in-fact standing, reasoning in part that the taxpayer's geographic distance from the poultry facility prevented her from suffering an injury different from that of the general public.

Our reasoning in *Egan* applies here too. Because of the significant geographic distance between Reiser-McCormick's property and the location of the 19 proposed wind turbines in the CUP application, we agree with the district court that Reiser-McCormick's ownership of property in Cherry County is not sufficient to demonstrate she would suffer an injury in fact if the CUP was granted.

### (b) No Injury in Fact From
### Neighbor's Lease Agreement

Reiser-McCormick argues that even though her property is 40 miles from the wind turbine project for which BSH sought a CUP, she suffered an injury in fact because her property is "located within one mile of property identified in the CUP [a]pplication as a location where wind turbines and related facilities might be placed"[20] in the future. We understand this argument to be based on two items of evidence. First, the 300-plus page CUP application submitted by BSH refers to

---

[19] See *Egan, supra* note 2.

[20] Brief for appellants at 31.

a lease/easement agreement between Cherry County Wind, LLC, an affiliate of BSH, and the owner of property located 1 to 2 miles from Reiser-McCormick's property. And second, Reiser-McCormick offered the affidavit of a real estate broker who opined that reference to the neighbor's lease/easement agreement in the CUP application resulted in an immediate dimunition in the value of Reiser-McCormick's property. As we will explain, this evidence does not support injury-in-fact standing to enjoin issuance of the CUP.

### (i) CUP Application Does
### Not Establish Standing

Reiser-McCormick relies on the CUP application's reference to a lease agreement found in a section of the CUP application titled "Project Lease Memoranda." This section contains, among other agreements, a lease/easement agreement between Cherry County Wind and Bluestem Sandhills, LLC. While it is not entirely clear from our record, other portions of the CUP application suggest this lease agreement pertains to property located 1 to 2 miles from Reiser-McCormick's property.

But it is undisputed that despite the existence of this lease agreement, no entity is currently authorized to construct or operate wind turbines on the neighbor's property, and the CUP application at issue did not request such authority. Instead, such authority would require issuance of an entirely new and separate CUP. As such, evidence showing the existence of the lease agreement did not establish injury-in-fact standing to challenge the CUP at issue here, and Reiser-McCormick's arguments to the contrary are meritless.

### (ii) Broker's Affidavit Does
### Not Establish Standing

Reiser-McCormick argues that the affidavit of the real estate broker was erroneously excluded by the district court and that if it had been received into evidence, it would have established her injury-in-fact standing. We disagree.

As we have explained, the lease agreement referred to in the CUP application (and on which the broker's affidavit relied) was not directly related to the specific wind turbine project for which BSH was seeking a CUP. Yet, the broker relied on reference to the lease in the CUP application to opine that Reiser-McCormick's property suffered an "immediate stigma, an impairment to marketability and desirability, and a significant material reduction in value." According to the broker, this was so because "any prospective purchaser" will "factor into its decision that wind-related facilities, including large wind turbines . . . *have the potential to* be erected on the neighboring" property. (Emphasis in original.)

The district court sustained the defendants' foundational objection to the broker's opinion, finding the broker's experience related only to the Omaha, Nebraska, area and his affidavit disclosed no familiarity with rural Nebraska agricultural values and no particular experience in Cherry County. It further found the broker's affidavit did not identify what materials he reviewed when forming his opinion, did not tie his opinions to historical market data for agricultural real estate sold or offered for sale near wind farm projects, and referenced no comparable sales or market studies.

Reiser-McCormick argues the broker's opinion was nevertheless admissible, relying on the general proposition that an expert is qualified to offer a valuation opinion pertaining to real property so long as foundation is laid showing an acquaintance with the property and the state of the market.[21] An appellate court reviews a trial court's decision to admit or exclude expert testimony for an abuse of discretion,[22] and we find no abuse of discretion in the district court's conclusion that the broker's opinion was inadmissible because it lacked necessary foundation.

---

[21] See *Iske v. Metropolitan Utilities Dist.*, 183 Neb. 34, 157 N.W.2d 887 (1968).

[22] See *Hemsley, supra* note 7.

[13] For the testimony of an expert or lay witness to be admissible on the question of market value of real estate, the witness must be familiar with the property in question and the state of the market.[23] Here, the broker's affidavit did not show any familiarity with the valuation of property in Cherry County or the state of the market there, particularly as it related to the presence of wind farms. The district court did not abuse its discretion in sustaining the foundational objection to the broker's opinion.

And for the sake of completeness, we note that even if the district court had admitted the broker's affidavit, the record would still fail to show that Reiser-McCormick suffered an injury-in-fact sufficient to establish standing to challenge the CUP at issue in this case. The subject CUP requested authority for BSH to construct 19 wind turbines on property located 40 miles from Reiser-McCormick's property. The broker's opinion was based on speculation that because the CUP application referenced a lease agreement with Reiser-McCormick's neighbor, there was "the potential" in the future that a wind turbine project might "be erected on the neighboring" property. (Emphasis omitted.) But as stated earlier, injury-in-fact standing requires an injury that is "'concrete in both a qualitative and temporal sense,'" and not "'merely abstract,'" and the alleged harm from such an injury must be "'actual or imminent, not conjectural or hypothetical.'"[24] Here, the broker's opinion did not show any actual or imminent harm from the neighbor's lease agreement, and at best, it relied on conjecture about the hypothetical possibility that a future wind turbine project might one day be approved closer to Reiser-McCormick's property. But our case law demonstrates that property owners do not show injury-in-fact standing

---

[23] *Liberty Dev. Corp. v. Metropolitan Util. Dist.*, 276 Neb. 23, 751 N.W.2d 608 (2008).

[24] *Egan, supra* note 2, 308 Neb. at 53, 952 N.W.2d at 669, quoting *Central Neb. Pub. Power Dist., supra* note 15.

just because they are concerned that approval of a project many miles from their property today might lead to the future approval of similar projects nearby.[25]

## 2. No Standing Under
## Zoning Regulations

PTS and Reiser-McCormick argue they have standing to challenge issuance of the CUP under either § 1202 or § 910 of the Cherry County zoning regulations. We note the operative amended complaint in this CUP appeal alleged that PTS and Reiser-McCormick had standing under "§ 1202 of the Cherry County Zoning Regulations" but made no mention of § 910. Regardless, it appears that both of these zoning regulations were argued by the parties and considered by the district court during the evidentiary hearing on standing, so we are satisfied that the applicability of both zoning regulations has been sufficiently preserved for appellate review.

We have recognized that the Legislature may confer standing by statute in situations that do not necessarily meet the common-law injury-in-fact test,[26] but we have not directly addressed whether such standing can be conferred by county zoning regulations. We need not resolve that issue here, however, because even assuming without deciding that a county zoning regulation can confer standing to challenge issuance of a CUP, the regulations relied upon by PTS and Reiser-McCormick are inapplicable to the facts of this case.

Section 1202 addresses complaints based upon violations of the zoning regulations, and provides in relevant part:

> In addition to other remedies, the County Board or other proper local authority of the County, as well as any owner(s) of property within the district affected by the

---

[25] See *Egan, supra* note 2 (holding taxpayer does not show injury-in-fact standing based on fear that approval of special use permit for poultry operation 13 miles from her property might lead to approval of similar operations closer to her property).

[26] See, *Egan, supra* note 2; *Griffith, supra* note 18.

regulations, may institute any appropriate action or pro-
ceedings to prevent such unlawful construction, erec-
tion, reconstruction, alteration, repair, conversion, main-
tenance, business or use in or about the premises. Any
taxpayer or taxpayers in the County may institute pro-
ceedings to compel specific performance by the proper
official or officials . . . pursuant to such sections of
this Resolution.

This zoning regulation does not confer standing on either
PTS or Reiser-McCormick to challenge issuance of the CUP.
Their amended complaint did not allege the violation of any
zoning regulations, but instead alleged that two of the commis-
sioners had conflicts of interest under the NPADA and should
not be allowed to vote on the CUP application. Nor do we see
anything in the record establishing that PTS is a "taxpayer[]  in
the County" within the meaning of § 1202.

The alternative standing argument of PTS and Reiser-
McCormick is based on § 910 of the Cherry County zoning
regulations. Article 9 of the zoning regulations, specifically
§ 907.01, creates the Cherry County Board of Adjustment
authorized to "hear and decide appeals where it is alleged by
the appellant that there is an error in order, requirement, deci-
sion or refusal made by the Zoning Administrator or official
based on or made in the enforcement of this Resolution or any
regulation relating to the location of structures." According to
§§ 907.02 and 907.03, the board of adjustment also interprets
the zoning map and considers requests for variances. Section
910 grants a right to appeal from decisions of the board
of adjustment, and provides that "[a]ny person or persons,
jointly or severally, aggrieved by any decision of the Board
of Adjustment, or any officer, department, board or bureau
of the County," may appeal, "setting forth that such decision
is illegal."

PTS and Reiser-McCormick argue that the Board should
be considered a "board or bureau of the County" within the
meaning of § 910, and they further argue they have been

"aggrieved" because they claim any decision to issue the CUP would be illegal. But they do not explain how their action to enjoin issuance of the CUP pertains to anything governed by article 9 of the zoning regulations or how it relates in any way to a decision by the board of adjustment.

Instead, this action sought to prevent the Board from issuing a CUP, which is governed under article 10 of the Cherry County zoning regulations, not article 9. We agree with the district court that the provisions of § 910 do not pertain to a CUP and are inapplicable here.

### 3. No Standing Under § 23-114.05

PTS and Reiser-McCormick also argue they have standing to challenge the CUP by virtue of § 23-114.05, which provides in relevant part:

> In addition to other remedies, the county board or the proper local authorities of the county, as well as any owner or owners of real estate within the district affected by the regulations, may institute any appropriate action or proceedings to prevent such unlawful construction, erection, reconstruction, alteration, repair, conversion, maintenance, or use, to restrain, correct, or abate such violation, or to prevent the illegal act, conduct, business, or use in or about such premises. Any taxpayer or taxpayers of the county may institute proceedings to compel specific performance by the proper official or officials of any duty imposed by such sections or in resolutions adopted pursuant to such sections.

We addressed and rejected a similar standing argument in *Egan*.[27] As already discussed, *Egan* held the landowner did not have injury-in-fact standing to challenge a special use permit allowing construction of a poultry production facility that was located approximately 13 miles from her property.

---

[27] *Egan, supra* note 2.

But the landowner in *Egan* also argued that she had standing to challenge the special use permit under § 23-114.05. We disagreed.

*Egan* recognized that the Legislature can confer standing that is broader than common-law injury-in-fact standing, but we concluded that § 23-114.05 confers standing to challenge an alleged zoning violation, not to challenge the issuance of a special use permit.[28] Because the action in *Egan* did not involve an alleged zoning violation, we held that any standing conferred by § 23-114.05 was inapplicable.

The rationale from *Egan* applies here as well. Neither PTS nor Reiser-McCormick have alleged or argued there has been a violation of any zoning regulation. And during oral argument before this court, they candidly admitted their standing argument under § 23-114.05 is directly contrary to our holding in *Egan*. Section 23-114.05 does not confer standing on either PTS or Reiser-McCormick to challenge the CUP at issue here.

### 4. STANDING NOT CREATED BY WAIVER OR ESTOPPEL

[14] Finally, PTS and Reiser-McCormick argue we should find they have standing to bring an action challenging issuance of the CUP because they were allowed to appear before the Board during the CUP application process, and no one objected to them doing so. As framed, they seem to be relying on principles of waiver or estoppel to establish legal standing. But standing is a matter of subject matter jurisdiction,[29] and it is well established that subject matter jurisdiction cannot be created by waiver, estoppel, consent, or conduct of the parties.[30] This standing argument has no merit.

---

[28] *Id.*

[29] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[30] *Id.*

## V. CONCLUSION

For the foregoing reasons, neither PTS nor Reiser-McCormick has standing to challenge issuance of the CUP and the district court correctly dismissed the action for lack of subject matter jurisdiction. We therefore affirm the judgment of dismissal and do not reach any of the remaining assignments of error or arguments on appeal.

Affirmed.

Miller-Lerman, J., not participating.