Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/29/2025 09:08 AM CDT

Nebraska Firearms Owners Association, a Nebraska nonprofit corporation, et al., appellants, v. City of Lincoln, Nebraska, a municipal corporation, and Leirion Gaylor Baird, in her official capacity as mayor of the City of Lincoln, Nebraska, appellees.

___ N.W.3d ___

Filed August 29, 2025.    No. S-24-503.

1. **Motions to Dismiss: Appeal and Error.** Appellate review of an order granting a motion to dismiss is de novo.

2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

3. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.

4. ____: ____: ____. Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

5. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

6. **Standing: Proof.** To show standing, it is generally insufficient for a plaintiff to have merely a general interest common to all members of the public.

7. **Standing: Parties.** A plaintiff does not generally have standing to bring a case on behalf of a third party.

8. ____: ____. The focus of the standing inquiry is not whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.

- 724 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

9. **Standing.** An injury is sufficient for standing purposes when it is concrete in both a qualitative and temporal sense, and it must be distinct and palpable, as opposed to merely abstract. And the alleged harm from such an injury must be actual or imminent, not conjectural or hypothetical.

10. **Municipal Corporations: Injunction: Proof: Taxation.** A person seeking to restrain the action of a governmental body must show some special injury peculiar to himself or herself aside from, and independent of, the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.

11. **Standing: Pleadings: Proof.** When considering a facial challenge to standing, the trial court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing.

12. **Standing: Jurisdiction: Proof.** A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Seth Morris, of Liberty Law Group, and Jacob Huebert, of Liberty Justice Center, pro hac vice, for appellants.

Yohance L. Christie, Lincoln City Attorney, Jocelyn W. Golden, Tyler K. Spahn, and Lily L. Ealy, for appellees.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

FUNKE, C.J.

## I. INTRODUCTION

This case requires us to determine whether litigants can bring a challenge to a law that has not yet been enforced against them. The Nebraska Firearms Owners Association (NFOA) and several individuals sued the City of Lincoln, Nebraska, and its mayor (individually and collectively the City), arguing that an executive order and several local ordinances are preempted by state law. The district court concluded

- 725 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

that neither the NFOA nor the individuals had standing. On appeal, we conclude that because the NFOA failed to allege that it has the authority to bring this matter on behalf of its members, as required by our case law, it does not have associational standing. The individual appellants, however, do have standing because they have alleged a credible threat of prosecution that is sufficiently imminent, which is enough to establish an injury in fact for the purposes of a preenforcement challenge. Accordingly, we affirm the judgment of the district court in part and in part reverse the judgment and remand the cause for further proceedings.

## II. BACKGROUND

### 1. Events Leading to Suit

In April 2023, the Governor of Nebraska signed 2023 Neb. Laws, L.B. 77, into law. The committee statement associated with L.B. 77 explains that the bill "[p]rovide[s] for [the] carrying of concealed handguns without a permit, change[s] provisions relating to concealed weapons, and prohibit[s] certain regulation of weapons by cities, villages, and counties."[1]

On the date L.B. 77 took effect, the mayor of Lincoln signed Executive Order No. 97962. That order prohibited the possession of any weapons—including firearms—in vehicles, buildings, or facilities owned, leased, controlled, or maintained by the City.

A few days later, Executive Order No. 97985 (amended order) repealed the initial order, replacing it with an order substantively similar but with updated definitions and a more detailed section on the type of behavior that is prohibited. The amended order purports to apply regardless of whether the individual has a valid concealed carry permit. The amended order further provides: "Any person who violates this policy shall be considered to be trespassing and subject to criminal and civil penalties, to include being banned from the

---

[1] Committee Statement, L.B. 77, Judiciary Committee, 108th Leg., 1st Sess. (Jan. 26, 2023).

- 726 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

premises. If any person in violation of this policy refuses to leave, they will be considered trespassing and law enforcement will be called."

In addition to the amended order, the City has several ordinances in effect that regulate the use and possession of firearms and other weapons. All of these ordinances predate L.B. 77, and none have been repealed since the passage of L.B. 77. Nor, as confirmed at oral argument, has the City disavowed any of the ordinances. The appellants take specific issue with the following ordinances from the Lincoln Municipal Code:

- § 12.08.200 (2013) prohibits weapons in public parks and park facilities.
- § 9.36.030 (1990) requires that the sale of any firearms in Lincoln be reported to law enforcement.
- §§ 9.36.035 (2018) and 9.36.040 (1990) make it unlawful to sell or possess multiburst trigger activators and switch-blade knives, respectively.
- § 9.36.110(1) (2019) regulates the storage of firearms in vehicles.

The record indicates that a violation of § 12.08.200 constitutes a misdemeanor punishable by a term in jail not to exceed 6 months, a fine of $500, or both. Violations of § 9.36.110 in the first and second instance constitute an "infraction," while a third or subsequent offense shall be a misdemeanor. Our record does not indicate whether there are specific penalties associated with the remaining ordinances.

## 2. Appellants

The NFOA brings this suit, purportedly on behalf of its members. The complaint alleges that many of the NFOA's members live in Lincoln and are, therefore, subject to the legal provisions at issue. It is further alleged that many of NFOA's members regularly carry concealed weapons, including in the City parks, but that they no longer do so because of the amended order and ordinances. If not for the amended order and ordinances, NFOA members would like to purchase

- 727 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

firearms in Lincoln and own switch-blade knives and multi-burst trigger activators.

In addition to the NFOA, there are four individual appellants involved in this case: Terry Fitzgerald, Dave Kendle, Raymond Bretthauer, and D.J. Davis. All the individual appellants assert that they have valid concealed carry permits and that they carry concealed firearms on a regular basis in order to protect themselves and their families. The complaint states that three of the individual appellants carry their firearms "100% of the time," while the fourth "usually" does so. Prior to the issuance of the amended order, all of the individual appellants frequently visited the City parks and trails while carrying their concealed firearms, but they allege that they no longer do so because, under the amended order, this behavior could subject them to criminal prosecution for trespassing. The individual appellants also maintain that they never saw any signs or notices prohibiting such behavior until after the passage of the amended order.

Further, the individual appellants assert that they have refrained from purchasing any firearms in Lincoln because of the reporting requirements in § 9.36.030 but that they would purchase firearms in Lincoln if the ordinance was repealed or enjoined. Similarly, one of the individual appellants declares that he would own a multiburst trigger activator if § 9.36.035 did not prohibit him from doing so, and three of the four individual appellants would own switch-blade knives if not prohibited from doing so by § 9.36.040. All the individual appellants also store their firearms in their vehicles when visiting sites that do not allow concealed carry. This subjects them to the requirements of both state law under L.B. 77 and § 9.36.110(1).

### 3. District Court Proceedings

Based on the issuance of the amended order, as well as the City's failure to repeal its ordinances, the appellants filed an amended complaint seeking declaratory and injunctive relief

- 728 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

on the basis that state law, under L.B. 77, preempted the amended order and the ordinances. The appellants also alleged that the amended order and ordinances violated the principles of separation of power.

The City moved to partially dismiss the case, arguing the appellants lacked standing to challenge the amended order and ordinances. The district court, however, dismissed the case in its entirety for the same reason.

In its dismissal, the district court first noted that this court has not previously explained whether or how a party could establish standing to bring a preenforcement challenge to a law. As such, the district court purportedly relied on federal precedent, specifically *Susan B. Anthony List v. Driehaus*,[2] which holds that standing, specifically as to the topic of injury in fact, can be established where there is "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution.'"

In applying these principles to the amended order, the district court concluded that none of the appellants had standing to challenge the amended order, explaining that an injury in fact could not be established by allegations of the individual appellants' use of the parks and trails in the past. More specifically, the court found that because the individual appellants had never been asked to leave the parks or trails for carrying their concealed firearms, let alone had the amended order actually enforced against them, it could not conclude that there was any credible threat of prosecution that was sufficiently imminent.

Similarly, the court also concluded that all of the appellants lacked standing to challenge § 12.08.200. In support of this finding, it was noted that despite the individual

---

[2] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014).

- 729 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

appellants' repeated visits to the parks and trails with their concealed firearms, the ordinance had never been enforced against them, which the court took to show a lack of any credible threat of enforcement. As to the appellants' challenge to § 9.36.110(1), the court declined to conclude that an injury in fact could be established where the alleged injury was "confusion" over which set of laws governed their legal obligations when storing firearms in vehicles. The court again relied on federal case law holding that confusion does not create an injury. As to the rest of the ordinances, the court found that "a mere intention to engage in a proscribed act is insufficient to satisfy the pre-enforcement standing requirements."

The appellants appealed, and we granted their petition to bypass review by the Nebraska Court of Appeals.[3]

## III. ASSIGNMENTS OF ERROR

The appellants assign, restated and restructured, that the district court erred in concluding that they lacked standing to challenge the amended order and §§ 12.08.200, 9.36.030, 9.36.035, 9.36.040, and 9.36.110(1) of the Lincoln Municipal Code.

## IV. STANDARD OF REVIEW

[1] Appellate review of an order granting a motion to dismiss is de novo.[4]

[2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[5]

[3] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the

---

[3] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2024).

[4] *In re Application A-19594*, 315 Neb. 311, 995 N.W.2d 655 (2023).

[5] *Chatterjee v. Chatterjee*, 313 Neb. 710, 986 N.W.2d 283 (2023).

- 730 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.[6]

## V. ANALYSIS

### 1. Requirements for Standing

We begin with a review of the principles governing our standing jurisprudence.

[4-8] Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[7] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[8] To show standing, it is generally insufficient for a plaintiff to have merely a general interest common to all members of the public.[9] Further, a plaintiff does not generally have standing to bring a case on behalf of a third party.[10] The focus of the standing inquiry is not whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.[11] Our case law identifies several factors which a litigant must satisfy in order to establish standing.[12] This matter, however, turns on the first of the factors—whether the appellants have suffered an injury in fact.

[6] *Zeiler v. Reifschneider*, 315 Neb. 880, 1 N.W.3d 880 (2024).

[7] *Chatterjee, supra* note 5.

[8] *Id*.

[9] *Preserve the Sandhills v. Cherry County*, 313 Neb. 590, 985 N.W.2d 599 (2023).

[10] *Chatterjee, supra* note 5.

[11] *Id*.

[12] See *Susman v. Kearney Towing & Repair Ctr.*, 310 Neb. 910, 970 N.W.2d 82 (2022).

- 731 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

[9,10] An injury is sufficient for standing purposes when it is concrete in both a qualitative and temporal sense, and it must be distinct and palpable, as opposed to merely abstract.[13] Further, the alleged harm from such an injury must be actual or imminent, not conjectural or hypothetical.[14] Additionally, a person seeking to restrain the action of a governmental body must show some special injury peculiar to himself or herself aside from, and independent of, the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.[15]

[11,12] Of further relevance, when considering a facial challenge to standing, the trial court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing.[16] A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.[17]

### 2. NFOA LACKS STANDING

We first address whether the NFOA has standing to bring this action. As alleged in the complaint, the NFOA is a nonprofit corporation, recognized as a "501(c)(4)" organization. It is alleged that the NFOA has over 10,000 members, many of whom live in Lincoln and are, therefore, subject to the amended order and the ordinances. As noted above, the complaint further explains that the NFOA's members regularly visit the City parks and trails and that they refrain from purchasing firearms in Lincoln because of the ordinances. It

---

[13] *Preserve the Sandhills, supra* note 9.

[14] *Id.*

[15] *Id.*

[16] *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 312 Neb. 606, 980 N.W.2d 420 (2022).

[17] *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

- 732 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

is also alleged that the NFOA's members would purchase firearms, in addition to multiburst trigger activators and switchblade knives, if the ordinances were not in place. The complaint also includes an allegation that the NFOA's members store their firearms in their vehicles when visiting locations within Lincoln that do not permit concealed carry.

At oral argument, counsel for the appellants conceded that the NFOA could not, as an entity apart from its members, establish standing to challenge the amended order and ordinances. Instead, it is asserted that the NFOA only has standing on behalf of its members based on the above-mentioned allegations. The complaint does not, however, at any point allege the NFOA's representative capacity or its authority to appear on behalf of its membership.

In *Smithberger v. Banning*,[18] we were faced with the same situation. There, an organization attempted to bring suit on behalf of its members but failed to allege any details regarding the identity of its membership, its representative capacity, or its authority to act on behalf of its members.[19] In concluding that the organization did not have standing to sue on behalf of its members, we noted that such allegations "cannot be presumed."[20] In *Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection*,[21] this court again declined to find that an organization had standing on behalf of its members when it neglected to include those basic allegations.[22] That same analysis applies here, and, as such, we conclude that the NFOA does not, on behalf of its members,

[18] *Smithberger v. Banning*, 130 Neb. 354, 265 N.W. 10 (1936).

[19] See *id.*

[20] *Id.* at 357, 265 N.W. at 11.

[21] *Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection*, 162 Neb. 781, 77 N.W.2d 464 (1956).

[22] See *id.*

- 733 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

have standing to challenge either the amended order or any of the ordinances.

### 3. Individual Appellants Have Standing to Challenge Amended Order and All but One Ordinance

We next address whether the individual appellants have standing. In this case, the individual appellants seek to challenge the amended order and the ordinances before the same can be enforced against them. In other words, the individual appellants bring a preenforcement challenge. They assert that the amended order and ordinances have created a credible threat of enforcement and prosecution such that actual enforcement is unnecessary to establish an injury in fact for standing purposes. The individual appellants allege that because of the amended order and ordinances, they have stopped visiting the City parks and trails. The individual appellants further allege they have refrained from engaging in behavior they would otherwise engage in solely because they wish to avoid prosecution, which, they argue, is enough to satisfy the injury-in-fact requirement.

It is the City's position, however, that our analysis in *In re Application A-18503*[23] foreclosed the possibility of such preenforcement actions. More specifically, the City argues that our standing requirements differ from federal case law in that an injury in fact can only be established once a law has been actually enforced against a party. Because such enforcement has not occurred here, the City asserts that the individual appellants do not face a credible threat of prosecution and, as such, necessarily fall short of our standing requirements.

We disagree with the City and use this opportunity to clarify the requirements for bringing a preenforcement challenge. We also note that although our case law on this topic is somewhat underdeveloped, these are not entirely uncharted waters.

---

[23] *In re Application A-18503*, 286 Neb. 611, 838 N.W.2d 242 (2013).

- 734 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

We addressed this issue in *Best & Co., Inc. v. City of Omaha*.[24] In that case, two corporations brought suit against the city of Omaha seeking an injunction to prevent the enforcement of two local ordinances, which the corporations alleged violated the Commerce Clause of the U.S. Constitution. The district court dismissed the action, based, in part, on a finding that the corporations had not yet experienced an irreparable injury such that the court should grant injunctive relief. This court reversed with instructions for the district court to grant a permanent injunction. In doing so, we relied on state and federal case law to enunciate that "'[plaintiffs] are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights.'"[25] As such, in concluding that the appellant corporations need not subject themselves to enforcement under the ordinances, we reasoned that "appellants could test the legality of the ordinance and its amendment by subjecting their representative to criminal prosecution and by having their business and property rights interfered with is not a sufficiently adequate remedy to preclude appellants from proceeding to secure injunctive relief."[26]

We briefly address the City's argument that our decision in *In re Application A-18503* has since precluded the possibility

---

[24] *Best & Co., Inc. v. City of Omaha*, 149 Neb. 868, 33 N.W.2d 150 (1948). See *State ex rel. Nelson v. Butler*, 145 Neb. 638, 651, 17 N.W.2d 683, 691 (1945) (regarding question of whether intervenors could challenge constitutionality of resolution not yet in effect, this court commented that "[i]t is firmly established as the universal rule that a person 'may attack the constitutionality of a statute only when and so far as it is being *or is about to be applied* to his disadvantage'" (emphasis supplied)). See, also, *Skag-Way Department Stores, Inc. v. City of Omaha*, 179 Neb. 707, 140 N.W.2d 28 (1966) (implicitly finding appellants had standing to bring preenforcement challenge by reaching merits of case).

[25] *Best & Co., Inc., supra* note 24, 149 Neb. at 880, 33 N.W.2d at 157 (quoting *Terrace v. Thompson*, 263 U.S. 197, 44 S. Ct. 15, 68 L. Ed. 255 (1923)).

[26] *Id*. at 880, 33 N.W.2d at 157.

- 735 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

of preenforcement challenges. This assertion is misplaced. *In re Application A-18503* involved a challenge to an application for appropriation of natural flow of water from a river. The appellants in that case alleged only the possibility of a speculative, future harm, which is insufficient under any standing doctrine. We do not read anything in that opinion as being inconsistent with the use of federal case law regarding preenforcement challenges. We proceed accordingly.

The U.S. Supreme Court has a well-developed body of case law on the matter of standing in preenforcement actions. As indicated by our above-mentioned reliance on federal case law in *Best & Co., Inc.*,[27] our standing case law, at least with regard to preenforcement actions, mirrors, and, therefore, can be understood by looking to, federal cases.

The U.S. Supreme Court has recognized that threatened enforcement of a law can be sufficient to create an injury in fact.[28] In the case of such a threat, "it is not necessary that [the] petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute."[29] Instead, the threatened harm need only be sufficiently imminent and substantial.[30] In other words, "'[i]f the injury is certainly impending[,] that is enough.'"[31] More specifically, the high court has explained that the injury-in-fact requirement can be satisfied where there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed

---

[27] *Best & Co., supra* note 24.

[28] See *Driehaus, supra* note 2.

[29] *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974).

[30] See *Driehaus, supra* note 2. See, also, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021).

[31] *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979).

- 736 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

by a statute, and there exists a credible threat of prosecution thereunder."[32]

A few cases illustrate the circumstances in which the U.S. Supreme Court has found such a threat to be sufficient.

In *Babbitt v. Farm Workers*,[33] the Court addressed a preenforcement challenge to a statutory provision that made it an unfair labor practice to promote boycotts through the use of "'dishonest, untruthful, and deceptive publicity.'" There, the appellees alleged that although they did not intentionally engage in dishonest publicity, inaccurate statements were inevitable, and, in such a scenario, they feared they would face prosecution. Despite the fact that "the criminal penalty provision [had] not yet been applied and may never [have been] applied to [the appellees]," the Court found a credible threat of prosecution because, on its face, the statute would apply to the appellees' behavior and because the state had not disavowed any intention of invoking the criminal penalties if a violation did occur.[34]

The U.S. Supreme Court utilized this same line of reasoning in *Holder v. Humanitarian Law Project*.[35] In *Holder*, the Court considered a preenforcement challenge to a statute criminalizing support for foreign terrorist organizations.[36] The appellants alleged they had previously, and would in the future, provide support to one of these organizations. The Court concluded, as in *Babbitt*, that there existed a credible threat of enforcement because the government had not disavowed or otherwise indicated any intention not to prosecute the appellants if they engaged in such proscribed activity.[37]

---

[32] *Id*.

[33] *Id*., 442 U.S. at 310.

[34] See *id*., 442 U.S. at 302.

[35] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010).

[36] See *id*.

[37] See *id.*

- 737 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

The U.S. Supreme Court further explained and built upon *Holder* in *Driehaus*.[38] *Driehaus* involved two organizations' challenge to an Ohio statute prohibiting "'false statements'" during a political campaign.[39] The organizations alleged that they had previously engaged in a form of speech which could be construed as being similar to the proscribed speech and that they planned to engage in the same sort of speech in the future, but that they now faced the prospect of committing either a misdemeanor or a felony for engaging in such prohibited speech. Because the appellants had pleaded sufficiently specific allegations regarding their intended future actions, the Court found that the organizations had established an injury in fact. In doing so, the Court rejected the argument that it was unlikely the law would be enforced against the organizations. Instead, citing the fact that complaints had already been filed against the organizations, the Court found that the combined threat of commission proceedings and criminal prosecution, as permitted by the statute, was sufficient to create a credible threat of future enforcement.

Together, the above-discussed cases stand for the proposition that a preenforcement challenge to a law may be brought, and the injury-in-fact requirement will be satisfied, if an appellant carries the burden of showing that the appellant faces a credible threat of future enforcement, which is sufficiently imminent.

(a) Amended Order and Lincoln Municipal Code
§§ 12.08.200, 9.36.030, 9.36.035, and 9.36.040

We turn now to specifically address the amended order and ordinances at issue. Taken together, the amended order and § 12.08.200 prohibit the carrying of firearms on the City property, including its parks and trails. All the individual appellants allege that this is behavior in which they had previously

---

[38] See *Driehaus, supra* note 2.

[39] *Id.*, 573 U.S. at 151.

- 738 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

engaged because they regularly used the parks and trails while carrying their firearms. It is also alleged that they wish to engage in these same activities in the future but that they have not done so recently because of their fear of being prosecuted under the amended order and § 12.08.200.

These allegations are sufficient to establish standing. As explained above, an injury in fact can be established if there is a sufficiently imminent threat of enforcement of a law. The individual appellants have alleged just that. On its face, the amended order and § 12.08.200 prohibit the behavior the individual appellants have engaged in and intend to engage in in the future—carrying their concealed firearms into the City parks and onto its trails in order to protect themselves and their families. If the individual appellants engage in this behavior, they may be prosecuted.

Additionally, there is reason to believe that enforcement of these provisions is certainly impending. First, Lincoln's mayor adopted the amended order only days after the passage of L.B. 77. Second, we cannot ignore the fact that there are criminal penalties attached to both the amended order and § 12.08.200, which, as in *Babbitt*, is relevant for determining whether there is a credible fear of prosecution.[40] The amended order, contrary to the City's contentions, threatens civil or criminal prosecution for trespass, while violations of § 12.08.200 constitute misdemeanors punishable by fines and jail time. Third, the City, as recently as oral argument, has explicitly refused to disavow enforcement of either the amended order or § 12.08.200, and we see no reason to assume the law is moribund or otherwise inapplicable.

Further, it matters not that the individual appellants have before entered the parks and trails with their firearms (whether lawfully or unlawfully) and that neither the amended order nor § 12.08.200 was enforced against them for doing so. As made clear by the analyses in *Babbitt*, *Holder*,

---

[40] See *Babbitt, supra* note 31.

- 739 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

and *Driehaus*, evidence of past enforcement is not the only factor in determining the imminence of the threat of prosecution, and an injury in fact may be found without it.[41] As the U.S. Eighth Circuit Court of Appeals has explained that "'the threat is latent in the existence of [the amended order and the ordinances].'"[42]

Therefore, we conclude that all the individual appellants have standing to challenge both the amended order and § 12.08.200.

### (b) Lincoln Municipal Code §§ 9.36.030, 9.36.035, and 9.36.040

Proceeding to an analysis of the other ordinances, the complaint alleges that all the individual appellants would purchase firearms in Lincoln if § 9.36.030 did not require that all firearm purchases be reported to law enforcement. With regard to § 9.36.035, only Kendle asserts that he would purchase a multiburst trigger activator if it were not for the ordinance. Similarly, only Fitzgerald, Kendle, and Davis allege that if it were not for § 9.36.040, they would like to own a switchblade knife.

Again, these are the sorts of situations which the U.S. Supreme Court has repeatedly said are justiciable. Here, the individual appellants allege that, absent the ordinances, they would engage in behavior that is currently prohibited, namely purchasing firearms without reporting them to law enforcement and possessing multiburst trigger activators and switchblade knives. As with § 12.08.200, the City has similarly refused to disavow the enforcement of these ordinances. As such, we must conclude that the individual appellants have adequately alleged they have an intention to engage in a course of conduct which is prohibited and that there is a credible threat of imminent prosecution if they do so.

---

[41] See *id.*; *Holder, supra* note 35; and *Driehaus, supra* note 2.

[42] *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006) (quoting *Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003)).

- 740 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

We note, however, that because the allegations relating to possessing multiburst trigger activators and switch-blade knives are limited to only particular appellants, only those individual appellants have standing to challenge those ordinances. Specifically, only Kendle can challenge § 9.36.035, while only Fitzgerald, Kendle, and Davis can challenge § 9.36.040.

(c) Lincoln Municipal Code § 9.36.110(1)

We move to address the individual appellants' challenge to the final ordinance. Section 9.36.110(1) of the Lincoln Municipal Code dictates that it shall be unlawful for a firearm to be kept in an unoccupied vehicle unless the vehicle is locked and the firearm is not visible from outside the vehicle. It is the individual appellants' argument that this provision, although similar, is not entirely consistent with the state of the law under L.B. 77. They argue they are harmed by the need to conform their behavior to both state and local law, rather than just to state law, as arguably intended by L.B. 77.

This allegation is insufficient to establish an injury in fact. The complaint does not allege either that the individual appellants wish to engage in a behavior prohibited by the ordinance or that they have had to change their behavior to comply with the ordinance. The individual appellants have no reason to fear prosecution. Further, a lack of clarity or confusion regarding the state of the law is not an injury.[43]

## VI. CONCLUSION

For the foregoing reasons, we conclude that the NFOA does not have standing to challenge either the amended order or the ordinances. The individual appellants, however, have standing as to the amended order and §§ 12.08.200, 9.36.030, 9.36.035, and 9.36.040, as described above. The individual appellants have not suffered an injury in fact such that they can challenge § 9.36.110(1). Accordingly, we affirm the judgment

---

[43] See *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457 (8th Cir. 2022).

- 741 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

of the district court as to the NFOA and as to the individual appellants' challenge to § 9.36.110(1), but we reverse the judgment on all other grounds and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

MILLER-LERMAN, J., concurring.

I concur in the opinion of the court.

I write separately to observe that "associational standing" and "organizational standing" doctrines were not raised as issues in this case, so I respectfully believe a concurrence on how these doctrines should be addressed in a future case is not indicated.

PAPIK, J., concurring.

I concur fully in the court's decision as to the standing of both the Nebraska Firearms Owners Association (NFOA) and the individual appellants. I write separately to make a few additional observations regarding associational standing.

The majority opinion concludes that under two of our precedents, *Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection*, 162 Neb. 781, 77 N.W.2d 464 (1956), and *Smithberger v. Banning*, 130 Neb. 354, 265 N.W. 10 (1936), NFOA failed to establish its standing to challenge an executive order and city ordinances regulating the possession, sale, and storage of firearms and other weapons. The majority reads those cases to require an association suing on behalf of its members to allege facts regarding "the identity of its membership, its representative capacity, or its authority to act on behalf of its members" to establish its standing and concludes NFOA failed to include such allegations here. While I think that the cases mentioned above can be fairly read to require allegations about an association's membership and whether it has authority to act on behalf of its members to establish the association's standing, the cases seem to stop short of

- 742 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

adopting a complete rule for determining whether an association has standing to sue on behalf of its members. Subsequent cases do not appear to have explored this issue further.

Without a fully developed associational standing doctrine, we might be confronted with an argument in the future that we should adopt the three-part test the U.S. Supreme Court has formulated for determining whether an association has standing to sue on behalf of its members. See *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). I do not believe we should do so without first giving serious consideration to Justice Thomas' critique of the U.S. Supreme Court's approach to associational standing. In a concurring opinion in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 399, 144 S. Ct 1540, 219 L. Ed. 2d 121 (2024), Justice Thomas explained that while "[t]raditionally, a plaintiff had to show a violation of his own rights to have his claim considered by a common-law court," the U.S. Supreme Court's associational standing doctrine allows an association "to have standing based purely upon a member's injury, not its own." *Id.*, 602 U.S. at 399 (Thomas, J., concurring). He further explained that associational standing creates a remedial problem because "[a]lthough the association is the plaintiff in the suit, it has no injury to redress." *Id.*, 602 U.S. at 400.

In my view, Justice Thomas' observations regarding the U.S. Supreme Court's associational standing doctrine are relevant to whether a similar associational standing doctrine should be recognized in Nebraska. Although standing in federal court is largely driven by the "case-or-controversy requirement" in article III of the U.S. Constitution, and the Nebraska Constitution lacks an analogous provision, see *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019), Justice Thomas argued that the "case-or-controversy requirement" incorporates the "traditional, fundamental limitations upon the powers of common-law courts." *Alliance for Hippocratic*

- 743 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

*Medicine, supra*, 602 U.S. at 399 (Thomas, J., concurring) (internal quotation marks omitted).

Under Nebraska law, in the absence of contrary direction from the Legislature, we rely on common-law standards to determine whether a litigant has standing. See *Griffith, supra*. See, also, Neb. Rev. Stat. § 49-101 (Reissue 2021) ("[s]o much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state, is adopted and declared to be law within the State of Nebraska"); Michael T. Morley & F. Andrew Hessick, *Against Associational Standing*, 91 U. Chi. L. Rev. 1539, 1593 (2024) (contending that "[n]either historical practice nor traditional equitable principles support associational standing"). And our existing common-law standing doctrine follows what Justice Thomas identified as the traditional rule that a plaintiff must show a violation of his or her own rights to establish standing. We often say that "[s]tanding requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf" and that, "[t]hus, generally, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties." *In re Application A-19594*, 315 Neb. 311, 320, 995 N.W.2d 655, 666 (2023).

Because the Nebraska Constitution does not have a "case-or-controversy requirement" like article III of the U.S. Constitution, we have recognized that the Legislature "may, so long as it acts within the bounds of other constitutional provisions, confer standing that is broader than the common-law baseline." *Griffith*, 304 Neb. at 297, 934 N.W.2d at 177. But I am not aware of any statute that confers standing on associations to bring suits on behalf of their members. In fact, the statute that would often be invoked by an association

- 744 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
NEBRASKA FIREARMS OWNERS ASSN. v. CITY OF LINCOLN
Cite as 319 Neb. 723

attempting to assert the injuries of its members (and was invoked in this case), the Uniform Declaratory Judgments Act, speaks of relief being sought by a person "whose rights, status or other legal relations" are at issue, see Neb. Rev. Stat. § 25-21,150 (Reissue 2016), as opposed to an association asserting the rights of such persons.

The parties to this case did not devote significant attention to the standing of NFOA as an association. Under these circumstances, I believe it appropriate to resolve NFOA's standing based on existing precedents, such as they are. If we are required to more fully address the doctrine of associational standing in the future, however, I believe we should consider Justice Thomas' concurrence discussed above and whether associational standing is consistent with our traditional standing doctrine.

Stacy, J., joins in this concurrence.