768 N.W.2d 420 (2009)
278 Neb. 137
In re 2007 ADMINISTRATION OF APPROPRIATIONS OF THE WATERS OF THE NIOBRARA RIVER.
Jack Bond and Joe McClaren Ranch, appellants,
v.
Nebraska Public Power District and Department of Natural Resources, appellees.
No. S-08-823.
Supreme Court of Nebraska.
July 17, 2009.
*422 Donald G. Blankenau and Thomas R. Wilmoth, of Husch, Blackwell & Sanders, L.L.P., Lincoln, for appellants.
Jon Bruning, Attorney General, Justin D. Lavene, and Marcus A. Powers for appellee Department of Natural Resources.
Stephen D. Mossman, of Mattson, Ricketts, Davies, Stewart & Calkins, Lincoln, for appellee Nebraska Public Power District.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
In this appeal, we address the interplay of preference rights and appropriation rights in a surface water dispute. The Department of Natural Resources (Department) has exclusive original jurisdiction to determine the validity of surface water appropriations.
This appeal presents the issue whether the Department retained jurisdiction over a junior appropriators' challenge to a senior appropriator's right to surface water after the junior appropriators obtained a condemnation award to use the water under their constitutionally superior preference rights.
The Department determined that the condemnation award rendered the appropriation dispute moot and that it lacked jurisdiction for further proceedings. On appeal, however, it has reversed its position and agrees with the junior appropriators. It now argues that the relief requested in the administrative hearing was distinct from the junior appropriators' preference rights. It requests that we remand the cause to it for further proceedings. But the other appellee and senior appropriator, Nebraska Public Power District (NPPD), contends that the Department correctly determined that the case was moot. We hold that the case is not moot.

BACKGROUND

OVERVIEW OF SURFACE WATER RIGHTS
Nebraska's laws governing surface water management, regulation, and allocation present a mosaic of private and public rights. This appeal centers on two of those rights: appropriation rights and preference rights.
*423 An appropriation right is the right to divert unappropriated stream water for beneficial use.[1] Under the prior appropriation system, each appropriator's right to divert unappropriated waters from a stream for a beneficial purpose receives a date of priority. An appropriation's priority date is the date when the Department approves the appropriator's right to divert water.
In a perfect world, there would be sufficient water to satisfy all appropriations for a given stream. But when a stream has insufficient water to satisfy all appropriation rights on it, the appropriator first in time is first in right.[2] That is, a senior appropriator with an earlier priority date has the right to continue diverting water against a junior appropriator with a later appropriation date when both appropriators are using the water for the same purpose.[3] But when the appropriators use the water for different purposes, a junior appropriator may nonetheless have a superior preference right over senior appropriators.
Under the Nebraska Constitution and statutes, when there is insufficient water to satisfy all appropriations, certain water uses take preference over others, despite the appropriators' priority dates.[4] So in times of shortage, aggrieved water users with superior preference rights may exercise their constitutional preference to obtain relief when the prior-appropriation system would otherwise deny such users access to water.[5] Those using the water for domestic purposes have preference over those claiming it for any other purpose.[6] And those using water for agricultural purposes have preference over those using it for manufacturing and power purposes.[7] And so, the junior appropriators' use of the diverted water for agricultural purposes took preference over NPPD's use of the water for power generation.[8]
Simply having a superior preference right, however, does not give that appropriator unfettered use of the water. An appropriator having a superior preference right, but a junior appropriation right, can use the water to the detriment of a senior appropriator having an inferior preference right. But the junior appropriator must pay just compensation to the senior appropriator.[9] So, although NPPD's appropriation right was senior to that of the junior appropriators, the junior appropriators could continue to divert water if they compensated NPPD.[10]
Under Nebraska's statutes, if an irrigation district or appropriator with a superior preference right cannot agree with a power generator on the compensation for use of the water, then the appropriator can commence a condemnation proceeding in county court to determine the compensation.[11] In a condemnation proceeding, the county court appoints appraisers, who then *424 return an award.[12] The compensation award cannot be greater than the cost of replacing the power that the power plant would have generated if it had retained use of the water.[13] For the Department, whether the parties agree on the compensation or the junior appropriators obtain a condemnation award, the result is the same: the Department cannot order the junior appropriators to cease diverting water to satisfy the senior appropriation for the period agreed to by the parties or contained in the condemnation award.
This explanation of the rights at issue and the governing statutory schemes should provide a lens through which to view our analysis.

ADMINISTRATIVE PROCEEDING
Jack Bond and Joe McClaren Ranch (collectively junior appropriators) own real property in Cherry County, Nebraska. In 2006, the Department granted them surface water appropriation rights on the Niobrara River. The rights granted each the ability to divert certain quantities of water from the river for agricultural use.
Near Spencer, Nebraska, downstream from the appropriators' properties, NPPD owns and operates a hydropower facility on the Niobrara River. The hydropower facility has been in operation since 1927. NPPD claims to hold surface water appropriations for the facility, the most recent of which dates to 1942.
In the spring of 2007, NPPD claimed that the Niobrara lacked sufficient water to satisfy all appropriation rights. NPPD requested that the Department administer the river so that it allowed NPPD to use the water according to its senior appropriation right. On May 1, after concluding that there was insufficient water for all appropriations, the Department issued closing notices. The junior appropriators and about 400 other junior water users received closing notices. The closing notices directed them to cease water diversions for the benefit of NPPD's hydropower facility.
The junior appropriators questioned the closing notices. So on May 11, 2007, they filed an administrative hearing request with the Department to determine whether the closing notices were validly issued.[14] The junior appropriators alleged that NPPD may have abandoned its appropriation rights, in whole or in part, and if it had, then no valid appropriation right justified the closing notices. Alternatively, the junior appropriators alleged that even if NPPD had a valid appropriation right, any call for water would be futile because it would not result in additional water reaching NPPD's facility. The junior appropriators also requested the Department to stay any future closing notices until it issued a final order regarding the validity of NPPD's appropriation right.
Initially, the Department lifted the May 1, 2007, closing notices. This allowed the junior appropriators to continue diverting water from the river. But on August 1, while the hearing was still pending, the Department issued new closing notices to the junior appropriators. In response, in case No. A-07-858, one junior appropriator appealed the issuance of the new closing notices to the Nebraska Court of Appeals. He argued that the Department, by issuing new closing notices, implicitly denied their request for a stay of any future closing notices pending a decision on NPPD's appropriation right. On October 10, the Court of Appeals sustained both NPPD's and the Department's summary dismissal motions and dismissed the appeal for lack of a final order.

*425 JUNIOR APPROPRIATORS EXERCISE PREFERENCE RIGHTS IN CONDEMNATION PROCEEDING
Meanwhile, on August 17, 2007, the junior appropriators filed a petition for condemnation of NPPD's water rights in the Boyd County Court. In their petition, the junior appropriators stated that they still disputed the validity of NPPD's appropriation right but "[b]ecause resolution of this issue may take several irrigation seasons," they elected to also exercise their preference rights. They also explicitly stated that they did not waive or concede any claims, allegations, or positions regarding the Department's administrative proceeding. The county court appointed appraisers who established a compensation award for NPPD for 20 years. NPPD is currently appealing that award.
After the appraisers returned an award and the Court of Appeals dismissed the first appeal, the Department asked its director to dismiss the junior appropriators' administrative proceeding. It argued that because the junior appropriators exercised their constitutional preference rights, they were not subject to any closing notices for 20 years. Because the junior appropriators were not subject to a closing notice to satisfy NPPD's appropriations for 20 years, the Department argued that they lacked standing in the administrative proceeding. NPPD also filed a motion to dismiss. It claimed that the junior appropriators' condemnation proceeding had mooted the appropriation controversy.

THE DIRECTOR'S ORDER
The director concluded that the junior appropriators' condemnation award divested the Department of jurisdiction over the administrative proceeding. He determined that the junior appropriators lacked standing. He determined that because of the condemnation award, the junior appropriators could not be subject to closing notices in favor of NPPD for the next 20 years. He concluded that they had no legally protectable interest or right in the controversy that would benefit from their requested relief. He rejected their argument that they had standing because their junior appropriation status devalued their property. He reasoned that because the parties' appropriation status could change in 20 years, this argument raised only a hypothetical question. Because there was "no active controversy remaining in the case," the director concluded that the Department lacked subject matter jurisdiction for further proceedings. The junior appropriators appeal.

ASSIGNMENT OF ERROR
The junior appropriators alleged that the director erred in concluding the Department lacked subject matter jurisdiction and dismissing the case.

STANDARD OF REVIEW
In an appeal from the Department, we review the director's factual determinations to decide whether such determinations are supported by competent and relevant evidence and are not arbitrary, capricious, or unreasonable.[15] Statutory interpretation, however, is a question of law.[16] Subject matter jurisdiction also is a question of law.[17] We decide questions of law independently of the legal determinations made by the director.[18]

*426 ANALYSIS

PARTIES' CONTENTIONS
The appropriators contend that the director erred in determining that they did not retain standing in the appropriation dispute. They argue that they have a continuing interest in obtaining a determination that the closing notices were illegally issued. They point out that if NPPD's appropriation rights have been abandoned or forfeited, then they have no obligation to compensate NPPD. They also argue their property value is lessened without a final determination because a prospective buyer knows that the property's irrigation rights are time restricted to 20 years. Finally, they argue that a favorable determination in the administrative proceeding would moot their preference rights case and their money would be returned.
Initially, the Department determined that when the junior appropriators obtained the condemnation award, that action divested the Department of jurisdiction because there was no remaining active case or controversy. On appeal, the Department has changed course. It now agrees with the junior appropriators that it has jurisdiction. NPPD disagrees. It claims that by obtaining a condemnation award, the junior appropriators mooted the administrative proceeding.

THE ISSUE IS MOOTNESS, NOT STANDING
We first clarify the framework under which we decide this appeal. In his order, the director made statements showing that he dismissed the administrative proceeding for lack of subject matter jurisdiction. He determined that the junior appropriators no longer had standing because the condemnation award mooted the appropriation dispute. But the director's reasoning blurs the distinction between standing and mootness.
Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court or tribunal's exercising its jurisdiction and remedial powers on the party's behalf.[19] It is true that a litigant must have a personal interest in the controversy both at the commencement of the litigation and throughout its existence.[20] But standing is a component of jurisdiction; only a party that has standing may invoke the jurisdiction of a court or tribunal.[21] And the junior appropriators did not lose standing if they possessed it under the facts existing when they commenced the litigation.[22]
Mootness differs from standing. Mootness refers to events occurring after the filing of suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.[23] Although a moot case is subject to summary dismissal,[24] it does not necessarily prevent a court from exercising jurisdiction.[25] But if an exception does not apply, a court must dismiss a case when the issues are no longer alive because the litigants lack a personal interest in their resolution. Dismissal is required because *427 the court or tribunal can no longer give any meaningful relief.[26] The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.[27] A case is not moot unless a court cannot fashion some meaningful form of relief, even if that relief only partially redresses the prevailing party's grievances.[28] A court assesses a plaintiff's personal interest under the framework of standing at the commencement of the litigation and under mootness thereafter.[29]
Here, obviously, the Department has original, exclusive jurisdiction to decide disputes over surface water appropriations.[30] And NPPD does not argue that the junior appropriators lacked standing when they filed their petition requesting a hearing regarding the validity of NPPD's senior appropriation. Thus, we analyze the issue whether the case was moot.

CASE WAS NOT MOOT
A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome.[31] Here, the junior appropriators challenged the validity of NPPD's senior appropriation. The junior appropriators' condemnation award provides them a 20-year superior preference over NPPD. But, currently, they must compensate NPPD for the water they divert from the river. So, a determination that NPPD had abandoned or forfeited its appropriations would immediately benefit the junior appropriators. And as the Department now acknowledges, we have recognized the priority of an appropriation as an important property right. Minimally, a senior appropriation entitles the permit holder to compensation from a superior-use appropriator.[32] These facts alone show that the junior appropriators have a legally cognizable interest in the outcome of the administrative proceeding before the Department. Thus, events occurring after the hearing request did not preclude the director from fashioning meaningful relief. The case is not moot.

ELECTION OF REMEDIES DOCTRINE DOES NOT APPLY
Finally, we reject NPPD's argument that the election of remedies doctrine barred the junior appropriators' requested relief in the administrative proceeding. That doctrine generally applies in two instances: when a party seeks inconsistent remedies against another party or persons in privity with the other party or when a party asserts several claims against several parties for redress of the same injury.[33] The doctrine *428 prevents a plaintiff from receiving double recovery for a single injury or compensation that exceeds the damages sustained.[34] But that reasoning does not apply here. First, NPPD does not inform us how a favorable decision in the administrative proceeding would result in a double recovery for the junior appropriators. More important, the junior appropriators were not seeking inconsistent remedies. They were enforcing separate rights.
The Legislature has given the Department jurisdiction over all matters concerning water rights for irrigation, power, and other uses, "except as such jurisdiction is specifically limited by statute."[35] Section 70-672 presents a limitation. It states that any person seeking to acquire water being used for power shall use the procedure to condemn property as set forth in chapter 76, article 7, of the Nebraska Revised Statutes. Thus, condemnation proceedings are the only way a junior appropriator with a superior preference right may enforce that right; the Department has no authority to condemn water or force parties to accept a subordination agreement.[36] But nothing in the condemnation procedures precludes junior appropriators with a superior agricultural preference right from also challenging the validity of senior appropriation right. Similarly, nothing in the appropriation procedures precludes junior appropriators from seeking a condemnation of the senior appropriation.[37]
In short, neither of these statutory procedures is exclusive or inconsistent. They provide separate means of enforcing separate water rights. A condemnation proceeding is the Legislature's means of protecting an appropriator's constitutionally superior preference for water use when relief under the appropriation procedures is not available.
As this case illustrates, the protection has gaps. The Department's issuance of the closing notices to the junior appropriators despite their preference right leaves the junior appropriators with limited options that will ensure them continued access to water: junior appropriators can either initiate condemnation proceedings and assert their superior preference right or challenge the validity of the senior appropriation right. Yet, to hold that junior appropriators must choose between these procedures would force them into the precarious position of relinquishing their preference rights to challenge the validity of a senior appropriation with an inferior preference status. This interpretation of the statutes would be inconsistent with preference rights under the Nebraska Constitution. We conclude the argument is without merit.

CONCLUSION
We conclude that the junior appropriators' administrative proceeding was not moot. The Department's director therefore erred in dismissing their hearing request. We remand the cause to the director for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WRIGHT, J., participating on briefs.
NOTES
[1] Neb.Rev.Stat. § 46-204 (Reissue 2004). See, also, Neb. Const. art. XV, § 6.
[2] Neb.Rev.Stat. § 46-203 (Reissue 2004).
[3] § 46-204. See, also, State, ex rel. Cary v. Cochran, 138 Neb. 163, 292 N.W. 239 (1940).
[4] See, Neb. Const. art. XV, § 6; § 46-204 and Neb.Rev.Stat. § 70-668 (Reissue 2003).
[5] Id.
[6] Id.
[7] Id.
[8] See id.
[9] Neb.Rev.Stat. § 70-669 (Reissue 2003).
[10] See id. See, also, Neb.Rev.Stat. § 76-711 (Reissue 2003).
[11] Neb.Rev.Stat. § 70-672 (Reissue 2003). See, generally, Neb.Rev.Stat. §§ 76-701 to 76-726 (Reissue 2003 & Cum.Supp.2008).
[12] § 76-706.
[13] § 70-669.
[14] Neb.Rev.Stat. § 61-206(1) (Cum.Supp. 2006).
[15] See In re Applications T-851 & T-852, 268 Neb. 620, 686 N.W.2d 360 (2004).
[16] Evertson v. City of Kimball, 278 Neb. 1, 767 N.W.2d 751 (2009).
[17] See Gilbert & Martha Hitchcock Found. v. Kountze, 275 Neb. 978, 751 N.W.2d 129 (2008).
[18] See In re Applications T-851 & T-852, supra note 15.
[19] See Myers v. Nebraska Invest. Council, 272 Neb. 669, 724 N.W.2d 776 (2006).
[20] Id.
[21] See, Ottaco Acceptance, Inc. v. Larkin, 273 Neb. 765, 733 N.W.2d 539 (2007); Myers, supra note 19.
[22] See Myers, supra note 19.
[23] See, e.g., Ridderbush v. Naze, No. 94-1861, 1995 WL 496754 (7th Cir. Aug. 17, 1995) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 64 F.3d 665 (7th Cir. 1995)).
[24] BryanLGH v. Nebraska Dept. of Health & Human Servs., 276 Neb. 596, 755 N.W.2d 807 (2008).
[25] See Evertson, supra note 16.
[26] See, e.g., DiMaio v. Democratic Nat. Committee, 555 F.3d 1343 (11th Cir.2009). Compare Smith v. Colorado Organ Recovery Sys., 269 Neb. 578, 694 N.W.2d 610 (2005).
[27] See, e.g., American Bird Conservancy v. Kempthorne, 559 F.3d 184 (3d Cir.2009); Southern California Painters & Allied v. Rodin, 558 F.3d 1028 (9th Cir.2009); City of Sequim v. Malkasian, 157 Wash.2d 251, 138 P.3d 943 (2006).
[28] Church of Scientology of Cal. v. United States, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); In re Continental Airlines, 91 F.3d 553 (3d Cir.1996).
[29] See Myers, supra note 19.
[30] § 61-206(1).
[31] See In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008).
[32] Loup River P.P.D. v. North Loup River P.P. & I. D., 142 Neb. 141, 5 N.W.2d 240 (1942); Vonburg v. Farmers Irrigation District, 132 Neb. 12, 270 N.W. 835 (1937).
[33] See Genetti v. Caterpillar, Inc., 261 Neb. 98, 621 N.W.2d 529 (2001).
[34] See id.
[35] § 61-206(1).
[36] See, generally, Hickman v. Loup River Public Power Dist., 173 Neb. 428, 113 N.W.2d 617 (1962).
[37] See § 61-206(1).