Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/26/2026 08:08 AM CDT

Common Cause and Dawn Essink, appellants and
cross-appellees, v. Robert B. Evnen, in his
official capacity as Nebraska Secretary
of State, appellee and cross-appellant.

___ N.W.3d ___

Filed June 26, 2026.    No. S-26-093.

1. **Moot Question: Justiciable Issues: Appeal and Error.** Mootness is a justiciability question that an appellate court determines as a matter of law when it does not involve a factual dispute.
2. **Moot Question: Jurisdiction.** Mootness is a justiciability doctrine that can prevent courts from exercising jurisdiction.
3. **Moot Question.** Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.
4. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.
5. **Moot Question: Words and Phrases.** A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.
6. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.
7. **Declaratory Judgments: Moot Question.** A declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.
8. **Declaratory Judgments: Justiciable Issues.** At the time that the declaration is sought, there must be an actual justiciable issue from which the court can declare law as it applies to a given set of facts.

9. **Justiciable Issues.** A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.
10. **Declaratory Judgments.** Declaratory relief cannot be used to obtain a judgment which is merely advisory.
11. **Moot Question.** A moot case is subject to dismissal.
12. **Moot Question: Appeal and Error.** The public interest exception to the mootness doctrine requires an appellate court to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Appeal dismissed.

Daniel J. Gutman, Alexander S. Arkfeld, and Sydney L. Hayes, of Gutman Law Group, for appellants.

Michael T. Hilgers, Attorney General, Cody S. Barnett, Zachary A. Viglianco, and Lincoln J. Korell for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, BERGEVIN, and VAUGHN, JJ.

FUNKE, C.J.

## INTRODUCTION

This appeal arises from the federal government's request for a copy of Nebraska's voter registration list. A membership organization and a registered voter challenge the trial court's ruling that they lack standing to maintain their action to block or limit the release of that list by the Nebraska Secretary of State (Secretary). The Secretary cross-appeals the trial court's ruling that the federal government is not an indispensable party to the action. We need not address either of those questions. Because the list has already been released to the federal government and the arguments of the organization and the voter to the contrary are unavailing, we find the matter to be moot and dismiss the appeal and cross-appeal.

## BACKGROUND

### Federal Request and Subsequent Complaint

On September 8, 2025, the U.S. Department of Justice (DOJ) sent a letter to Robert B. Evnen, in his official capacity as the Secretary, requesting "a copy of Nebraska's statewide voter registration list" so that the DOJ could assess the state's compliance with the "voter registration list maintenance provisions" of specific federal statutes. As relevant here, the DOJ directed that the copy contain "*all fields*," including registrants' full names, dates of birth, residential addresses, and driver's license numbers, or the last four digits of registrants' Social Security numbers. The DOJ claimed it was entitled to the information under federal law, and it directed that the information be provided to it by no later than September 22, 2025, by encrypted email or a secure file-sharing system.

On the date that the DOJ had set for the receipt of Nebraska's voter list, but before that information had been provided to the DOJ, Common Cause and Dawn Essink (collectively the appellants) sued Evnen in his official capacity, seeking to block or limit the release of Nebraska's voter list to the DOJ.

The appellants alleged that Essink was a registered voter in Nebraska and that in registering to vote, she had provided "private, sensitive information" to the state with the expectation that the information would "remain private." The appellants also alleged that Common Cause sued in a "representative capacity" on behalf of its members, who included registered Nebraska voters. According to the complaint, Common Cause's members included any individual who, within the past 2 years, had made a financial contribution to the organization or taken "meaningful action" in support of its work, including signing petitions directed to government officials, participating in letter-writing or phone-banking campaigns, attending town-hall meetings or other events organized by Common Cause, or "otherwise engaging in activities designed to advance the organization's mission."

The appellants claimed that providing the requested information to the DOJ would violate provisions in Neb. Rev. Stat. §§ 32-330 and 32-331 (Cum. Supp. 2024) that they claimed restricted the purposes for which copies of Nebraska's state-wide voter registration list could be made and barred disclosure of copies to "third party requesters"; prohibited sharing the list via the Internet; and barred the disclosure of certain information, including registrants' full dates of birth, their driver's license numbers, the last four digits of their Social Security numbers, and their signatures, as well as any information the registrants had designated as confidential under Nebraska law.[1] The appellants also claimed that the federal statutes upon which the DOJ relied did not in fact authorize or require disclosure of the requested information.

The appellants sought a declaration that the federal government's request, if fulfilled, would violate Nebraska law and that Nebraska law prohibits the Secretary from providing copies of Nebraska's voter registration list to the DOJ or, alternatively, limits the information that may be shared, as described above. The appellants also sought a temporary restraining order and a temporary injunction prohibiting the Secretary from sharing any information until the issues raised in the litigation were resolved, as well as "[s]uch other and further relief as the [c]ourt deems just and equitable."

## Initial Proceedings

The appellants apparently sought a hearing on their motion for a temporary restraining order but ultimately forewent that hearing upon the parties' agreement to "maintain the status quo." Several weeks later, the Secretary filed an unopposed motion to stay the proceedings until he concluded discussions with the DOJ about the "privacy of the voter information" that had been disrupted by a federal government shutdown.

---

[1] See § 32-331 (registered voter may file affidavit with election commissioner or county clerk to have information relating to voter's name, residence address, and telephone number remain confidential).

That motion was granted on October 23, 2025. However, approximately 1 month later, after the shutdown had ended, the Secretary filed a notice to lift the stay, and the proceedings resumed. The Secretary then allegedly "changed his mind" about not releasing the information while the litigation was ongoing. On December 17, 2025, he advised the appellants that he would provide the requested list to the DOJ on February 12, 2026.

Subsequently, over the course of January 2026, the appellants filed an amended motion for a temporary injunction and a motion for summary judgment, while the Secretary filed a motion to dismiss the appellants' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Specifically, as to jurisdiction, the Secretary argued that the appellants lacked standing because they "failed to allege a concrete injury to themselves." The Secretary also alleged that the appellants had failed to join an indispensable party, the DOJ.

Briefing was had, and a hearing was held. At the hearing, the appellants asked that "if the [c]ourt thinks that there is some sort of technical defect that needs to be remedied," they be given leave to amend their complaint to comply "with any technical difficulties or anything that [they] would need to add."

## DISTRICT COURT'S ORDER

After the hearing, in an order filed on February 6, 2026, and served on the parties on February 9, the district court dismissed the action without prejudice on standing grounds and overruled the appellants' amended motion for a temporary injunction and their motion for summary judgment. In so doing, the court relied on opinions of the federal courts regarding intangible harms and the disclosure of private information[2]

---

[2] See, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025).

in concluding that Essink lacked standing, because while she had alleged "she justifiably wishes to tightly control the information demanded by the DOJ," she had not alleged "her information will be released into the open." The court noted that in the appellants' briefs to the court, Essink had argued that the DOJ would use "third-party contractors to review her information." However, the court said that Essink did not allege this fact in the complaint and that even if she had, "alleging that the DOJ will use third-party contractors would not be analogous to public disclosure. It is speculative that hackers or other bad actors will gain access to Essink's information and publicly release it."

The court similarly found that insofar as Common Cause sued in a "'representative capacity'" on behalf of its members who were registered to vote in Nebraska, its standing "ha[d] the same flaws as Essink's standing." Further, the court opined that Common Cause "ha[d] not sufficiently alleged associational standing under Nebraska law." The court observed that when an association sues on behalf of its members, it must allege, among other things, its authority to sue on behalf of such members.[3] The court said that "Nebraska caselaw does not clearly establish what kind of 'authority' an association must have." However, the court said that "surely more is required" than alleging, as Common Cause did, that it informed its members that it was "'considering legal action'" and no one objected.

The court also rejected the Secretary's argument that the U.S. Attorney General in her official capacity was an indispensable party. The court reasoned that insofar as the DOJ "only requests the information under federal law," a declaratory judgment that the Secretary "cannot give the DOJ the information under state law" would not preclude him from giving the DOJ the information under federal law. As such,

---

[3] See *Nebraska Firearms Owners Assn. v. City of Lincoln*, 319 Neb. 723, 24 N.W.3d 891 (2025).

the court concluded the judgment in this case would not affect the DOJ's rights and, thus, the Attorney General in her official capacity was not an indispensable party.

Finally, under the heading "[d]iscretion," the court stated: "In some cases, courts should let plaintiffs try to fix jurisdictional defects by amending their complaint. . . . But that [was] not appropriate here because there [was] another reason to dismiss the case. Namely, the declaratory judgment sought by the [appellants] would not end the controversy." The court then reasoned that the declaratory judgment sought by the appellants would not resolve the question of whether federal law required the Secretary to comply with the DOJ's demand, regardless of state law.

### APPEAL AND "EMERGENCY MOTION FOR INJUNCTION" PENDING APPEAL

On February 9, 2026, the appellants appealed the dismissal of their complaint. They also sought "immediate injunctive relief" to prevent the release of the voter registration list while the appeal was pending. The Secretary opposed that motion.

Two days later, on February 11, 2026, we denied the appellants' motion for an injunction pending appeal. However, we ordered that the appeal be expedited and set for oral arguments on March 31.

On February 12, 2026, the Secretary sent Nebraska's voter registration list to the DOJ.

### MOTION FOR SUMMARY DISMISSAL AND OPPOSITION

The day after the list was sent to the DOJ, the Secretary moved for summary dismissal of the appeal under Neb. Ct. R. App. P. § 2-107(B)(1) (rev. 2022) on the grounds that the appeal was moot because the voter registration list had been released to the DOJ. The appellants opposed the motion. We overruled the Secretary's motion for summary dismissal and heard oral arguments in the matter.

## ASSIGNMENTS OF ERROR

The appellants assign, restated, that the district court erred in (1) concluding that they lacked standing, (2) concluding that Common Cause failed to sufficiently allege associational standing, (3) denying them leave to replead their complaint, and (4) exercising "discretion" after determining that it lacked subject matter jurisdiction.

The Secretary cross-appeals, assigning, restated, that the district court erred in finding that the Attorney General was not an indispensable party.

## STANDARD OF REVIEW

[1] Mootness is a justiciability question that an appellate court determines as a matter of law when it does not involve a factual dispute.[4]

## ANALYSIS

[2] Because mootness is a justiciability doctrine that can prevent courts from exercising jurisdiction,[5] we turn first to the question of whether the matter is moot.

[3-6] Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[6] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.[7] A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[8] The central question in a mootness

---

[4] *Johnson v. Vosberg*, 316 Neb. 658, 6 N.W.3d 216 (2024).

[5] *Id*.

[6] *Burbank v. Evnen, ante* p. 65, 32 N.W.3d 612 (2026).

[7] *Id*.

[8] *Id*.

analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.[9]

For the reasons set forth below, we agree with the State that this matter is moot because Nebraska's voter registration list has already been released to the DOJ.

## Court May Address Mootness Without Reaching Standing

Before proceeding further in our discussion of mootness, we must first address the appellants' claim that we cannot reach the issue of mootness without first addressing their standing. In so arguing, the appellants rely on opinions of this court wherein we have distinguished standing from mootness on the grounds that "[s]tanding is a jurisdictional component of a party's case," while mootness "'does not prevent appellate jurisdiction.'"[10] The appellants also point to two prior opinions of this court, *Johnson v. Vosberg*[11] and *Myers v. Nebraska Invest. Council*,[12] wherein we discussed standing or other jurisdictional matters before discussing mootness. We see no merit to the appellants' argument here.

Although not noted by the parties, there are a number of opinions in which we have addressed mootness before standing[13] or expressly declined to reach the question of standing

---

[9] *Id.*

[10] Reply brief for appellants at 7 (citing *Preserve the Sandhills v. Cherry County*, 313 Neb. 590, 985 N.W.2d 599 (2023), and quoting *Johnson, supra* note 4).

[11] *Johnson, supra* note 4 (discussing whether there was timely appeal from judgment or final order that does not implicate Neb. Rev. Stat. § 25-1315 (Reissue 2016) before discussing mootness).

[12] *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006) (discussing standing before discussing mootness).

[13] See, e.g., *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004); *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

because we concluded that the matter was moot.[14] For example, in *In re Applications of Koch*,[15] we stated:

> The issue originally presented in this appeal was whether the [appellants] had standing to object to [the individual appellee's] permit applications based upon their status as upstream landowners and the provisions of [Neb. Rev. Stat.] § 46-241(2) [(Cum. Supp. 2006)]. We conclude that this case is moot. Our resolution of the standing issue would have no impact on the [agency's] consideration of [the individual appellee's] applications, as that administrative proceeding has been concluded.

Similarly, in *Beachy v. Becerra*,[16] we "conclude[d] that the issue of [the appellant's] standing ha[d] been rendered moot by the initiation of the action against the [appellees] by the successor personal representative." We also did not reach the question of standing in *In re Guardianship & Conservatorship of Larson* because the "issue is moot."[17]

We do not view *In re Applications of Koch* and other opinions in which we discussed mootness before or in lieu of standing to be inconsistent with our oft-stated view that standing is jurisdictional, while mootness does not prevent appellate jurisdiction. Nor do we view those opinions to have

---

[14] See, e.g., *In re Applications of Koch*, 274 Neb. 96, 736 N.W.2d 716 (2007); *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006); *Beachy v. Becerra*, 259 Neb. 299, 609 N.W.2d 648 (2000). See, also, *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019) (dismissing appeal, whose assignments of error included question of standing, as moot); *Orchard Hill Neighborhood v. Orchard Hill Mercantile*, 274 Neb. 154, 738 N.W.2d 820 (2007) (concluding that appeal was not moot, but declining to address challenge to association's standing on grounds that it was unnecessary to resolve case).

[15] *In re Applications of Koch, supra* note 14, 274 Neb. at 99, 736 N.W.2d at 719.

[16] *Beachy, supra* note 14, 259 Neb. at 305, 609 N.W.2d at 652.

[17] See *In re Guardianship & Conservatorship of Larson, supra* note 14, 270 Neb. at 850, 708 N.W.2d at 274.

been impliedly overruled by *Johnson*. Instead, we view our approach in such opinions to be consistent with that of other jurisdictions, which have recognized that courts may "choose among threshold grounds for denying audience to a case on the merits."[18]

Notably, in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,[19] the U.S. Supreme Court ruled that in appropriate circumstances, a court may dismiss a case on forum non conveniens grounds without first conclusively establishing its own jurisdiction. The Supreme Court explained that "jurisdictional questions ordinarily must precede merits determinations in dispositional order[s]."[20] However, the Supreme Court reasoned that insofar as "'[j]urisdiction is vital only if the court proposes to issue a judgment on the merits," there are certain "'"threshold question[s]"'" that a court may resolve without establishing its jurisdiction.[21] Other courts have similarly opined that matters involving justiciability may be addressed without establishing jurisdiction because the answers to those questions do not involve a judgment on the merits.[22]

## PRESENT MATTER IS MOOT

Having established that we can address mootness without first addressing standing, we now turn to the question of

---

[18] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999).

[19] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007).

[20] *Id.*, 549 U.S. at 431.

[21] *Id.*

[22] See, e.g., *P.J. Potter Enter. v. Comfort Systems*, 83 Va. App. 626, 911 S.E.2d 814 (2025); *Rattray v. City of Brownsville*, 662 S.W.3d 860 (Tex. 2023); *Natural Resources v. Food & Water Watch*, 246 A.3d 1134 (Del. 2021); *Massachusetts Bay Ins. Co. v. Adkins*, 615 S.W.3d 580 (Tex. App. 2020); *Priester v. Baltimore Co.*, 232 Md. App. 178, 157 A.3d 301 (2017); *Yazdani v. Access ATM*, 941 A.2d 429 (D.C. 2008); *Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Trust*, No. 05-20-00747-CV, 2023 WL 2909179 (Tex. App. Apr. 12, 2023).

whether this matter is moot because the Secretary has released the requested voter registration list to the DOJ. The appellants "acknowledge that their request for injunctive relief is moot."[23] However, the appellants argue that the matter is not moot because they also sought declaratory relief, as well as "[s]uch other and further relief as the [c]ourt deems just and equitable." The State, on the other hand, argues that insofar as "preventing disclosure [of the list] was the sole aim of [the] Appellants' suit" and "lies at the heart of every facet of their prayer for relief," the disclosure of the list has mooted the case.[24]

[7-10] The appellants are correct that in cases where a party has sought both injunctive and declaratory relief, the inability of the court to grant the injunction sought does not, by itself, render the declaratory action moot as well.[25] However, we have also recognized that a declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.[26] At the time that the declaration is sought, there must be an actual justiciable issue from which the court can declare law as it applies to a given set of facts.[27] A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[28] Declaratory relief cannot be used to obtain a judgment which is merely advisory.[29]

---

[23] Brief for appellant in opposition to appellee's motion for summary dismissal at 2.

[24] Brief for appellee at 11.

[25] See, e.g., *Professional Firefighters Assn. v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011); *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989); *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986).

[26] *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018).

[27] *Id*.

[28] *Id*.

[29] *Rath, supra* note 13.

In this case, the first form of declaratory relief that the appellants suggest we could provide would amount to an advisory opinion.[30] Summarized, the appellants claim that we could provide them meaningful relief by addressing the Secretary's allegedly "maximalist position" on his authority to share Nebraska's voter registration list with the federal government,[31] because the Secretary's position will control until changed by a court[32] and the Secretary could "act again at any moment" to share the list "with no guarantee of a pre-disclosure notice to Nebraska's voters."[33] However, as the appellants' argument makes clear, the substance of the declaratory judgment sought here concerns some future request that the DOJ might make—a request which might involve different information and to which the Secretary might have a different response. In other words, the appellants seek an opinion that they "'"might . . . put on ice to be used if and when [the] occasion [arises]"'"[34] and not an opinion resolving a dispute in which they presently have a legally cognizable interest.

The appellants also argue that we could provide them meaningful relief by declaring that the Secretary must obtain a sworn oath verifying that the DOJ will "use the information only for the purposes prescribed by Nebraska law" and

---

[30] See, e.g., *Professional Firefighters Assn., supra* note 25; *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010), *abrogated on other grounds, City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011); *Duggan v. Beermann*, 249 Neb. 411, 424, 544 N.W.2d 68, 76 (1996) (court correctly declined to enter "an advisory opinion or any declaratory judgment" unless and until initiative measure was adopted); *Ryder Truck Rental v. Rollins*, 246 Neb. 250, 518 N.W.2d 124 (1994).

[31] Reply brief for appellants at 12.

[32] See Neb. Rev. Stat. § 32-201 (Reissue 2016) ("[t]he Secretary of State shall decide disputed points of election law. The decisions shall have the force of law until changed by the courts").

[33] Reply brief for appellants at 12.

[34] *Ryder Truck Rental, supra* note 30, 246 Neb. at 254, 518 N.W.2d at 127.

"take other steps that may be necessary to fulfill his statutory obligations under the Election Act."[35] The appellants are correct that we have previously stated that "[a] case is not moot unless a court cannot fashion some meaningful form of relief, even if that relief only partially redresses the prevailing party's grievances."[36] However, neither that opinion nor the two opinions of the federal courts upon which it relied involved declaratory relief,[37] and Neb. Rev. Stat. § 25-21,154 (Reissue 2016) expressly provides that a court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."[38] The relief proposed by the appellants as to oaths and the Secretary's alleged other obligations would not terminate the controversy or uncertainty here regarding the disclosure of Nebraska's voter registration list.

In addition, relying on *Chaney v. Evnen*,[39] the appellants seem to suggest that we could provide them equitable relief, although they do not identify what form such relief might take beyond the proposed declaratory judgments described above. We disagree. In *Chaney*, we could provide the appellant with equitable relief, because we could direct the "legal removal of the petition from the ballot even if we could not direct its

---

[35] Reply brief for appellants at 12 and 13 (citing § 32-330(4) and Neb. Rev. Stat. § 32-301 (Cum. Supp. 2024)). See, also, § 32-330(9).

[36] *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 146, 768 N.W.2d 420, 427 (2009).

[37] See *id*. See, also, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992); *In re Continental Airlines*, 91 F.3d 553 (3d Cir. 1996).

[38] See, e.g., *Zarybnicky v. County of Gage*, 196 Neb. 210, 241 N.W.2d 834 (1976) (where eminent domain proceeding was pending in which question of abandonment and its effect could be determined, action for declaratory judgment on claimed abandonment should have been dismissed).

[39] *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

physical removal,"[40] as the appellant had requested. There is no comparable relief that we could order here given the release of the list to the DOJ. "[E]quity will not seek to declare unlawful an action that has already been completed."[41]

## Public Interest Exception to Mootness Doctrine Is Inapplicable

[11,12] Ordinarily, a moot case is subject to dismissal.[42] However, Nebraska courts have recognized certain exceptions to this rule. One of those exceptions is the public interest exception, which requires an appellate court to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.[43]

The appellants argue that the public interest exception applies here. First, as to the nature of the question presented, the appellants argue that "it's hard to imagine an issue more public" than "whether the Secretary may share Nebraska's unredacted voter file—which includes highly sensitive data

---

[40] *Id*. at 519, 949 N.W.2d at 768. See, also, *Burbank, supra* note 6 (matter was not moot even though Secretary had already certified primary election ballot without listing appellant as candidate, where there was no known legal or practical barrier preventing Secretary from recertifying ballot to list her as candidate if such relief were ordered by court).

[41] *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 719, 605 N.W.2d 472, 477 (2000).

[42] *Burbank, supra* note 6.

[43] *Saint Joseph Tower Assisted Living v. Royce*, 320 Neb. 830, 30 N.W.3d 838 (2026). But see *Dep't of Family v. Grassroots Leadership*, 717 S.W.3d 854, 885 (Tex. 2025) (finding that public interest exception violated that state constitution's justiciability limits insofar as it allows adjudication of "admittedly non-live disputes"); *Doe v. Fairfax County School Board*, No. CL-2024-3171, 2024 WL 5709929 (Va. Cir. Aug. 26, 2024) (unpublished opinion) (similar).

on over one million individuals."[44] Second, as to the desirability of an authoritative adjudication, the appellants claim that insofar as the Secretary took a different position on the permissibility of disclosing the voter registration list in 2017, "Nebraskans need the sort of clarity only this [c]ourt can provide."[45] Third, as to the potential recurrence of the issue, the appellants argue that the issue is likely to recur and could "escape meaningful appellate review," given the Secretary's "atypical efforts to insulate his interpretation of the law from appellate review."[46]

Those arguments miss the mark. The appellants' first argument—about the nature of the question—concerns the merits of the underlying action and, specifically, whether Nebraska law bars the Secretary from releasing some or all of the voter registration list. However, we have previously indicated that we look to the assignments of error in a specific case in determining whether to exercise our discretion to review those assignments under the public interest exception.[47] In this case, the appellants' assignments of error primarily pertain to their standing. The first two of the appellants' assignments of error expressly concern standing. The remaining two also implicate standing insofar as the appellants argue that "[i]n deciding whether Appellants should be granted leave to amend, the [d]istrict [c]ourt was limited to analyzing whether an amendment to address any *jurisdictional* defects would be futile," but instead improperly suggested that the appellants' argument on the merits was "futile."[48]

---

[44] Reply brief for appellants at 13.

[45] *Id*. at 14.

[46] *Id*.

[47] See, e.g., *In re Guardianship of Tomas J.*, 318 Neb. 503, 18 N.W.3d 87 (2025); *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023); *Rath, supra* note 13.

[48] Brief for appellants at 21.

We agree with other jurisdictions that questions of standing generally do not fall within the public interest exception because standing is private and not public.[49] Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[50] The appellants claim that "if [they] don't have standing here, no one has standing to challenge the Secretary's interpretation of Nebraska laws protecting voter information."[51] However, that argument ignores the fact that the district court's discussion of the appellants' standing was based on the specific allegations of the appellants' complaint. Another party may raise different allegations, and as such, a court could reach different conclusions regarding that party's standing.

The appellants also point to our statement that "injunctive relief pending appeal should be sparingly used" to argue that Nebraska voters might not be able to avail themselves of emergency relief "the next time this situation recurs."[52] However, appellate review can occur even absent injunctive relief pending appeal,[53] and it is not clear to us that the underlying issue inherently evades appellate review.[54]

---

[49] See, e.g., *Friends of San Luis v. Archdiocese*, 312 S.W.3d 476 (Mo. App. 2010).

[50] *State v. McKinney, ante* p. 172, 33 N.W.3d 430 (2026).

[51] Reply brief for appellants at 13.

[52] *Id*. at 15.

[53] See, e.g., *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999) (court noting that record revealed no stay or supersedeas bond when finding that declaratory judgment action was moot because challenged sale had already been completed by time appeal reached court); *Lewis v. Goslin*, No. A-22-131, 2023 WL 2576915 (Neb. App. Mar. 21, 2023) (selected for posting to court website) (discussing failure to post supersedeas bond in connection with whether appeal was moot).

[54] See, e.g., *NP Dodge Mgmt. Co., supra* note 47; *Putnam, supra* note 53.

## CONCLUSION

Because Nebraska's voter registration list has already been released to the DOJ, this matter is moot, and we decline to apply the public interest exception to the mootness doctrine. As such, the appeal and cross-appeal are dismissed.

Appeal dismissed.